## Commonwealth *v*. Schmunk, Appellant.

*Criminal law—False pretense — Jurisdiction—Act of March* 31, 1860, *sec.* 111, *P. L.* 382.

In order to bring a case within the statute making it a misdemeanor to obtain goods under false pretense, the following things are alone requisite ; (1) a false pretense ; (2) an obtaining property by it ; (3) an intent to defraud ; and the correct way to determine whether any particular case falls within it, is, not to consider each of these things separately, but to look at them altogether ; for no case is within the statute unless all of them coexist in it.

" To obtain from another any chattel or valuable security with intent to cheat and defraud any person of the same," within the meaning of the

statute, means and refers to the final step in the succession of rights and events by which the defendant gets, secures and obtains the chattel, money, or valuable security so as to complete the offense and consummate his purpose.

Where a person in Pennsylvania in order to establish a financial credit and commercial rating makes statements in writing which he transmits by regular mail service to a company in New York city, and the company relying upon his statement accepts his order for goods, and delivers them to a common carrier for shipment to the person ordering the goods, who receives them at their destination in Pennsylvania, the person sending the order may be convicted of obtaining goods under false pretense.

Argued Nov. 10, 1902.   Appeal, No. 61, April T., 1903, by defendant, from judgment of Q. S. Allegheny Co., Sept. T., 1901, No. 1285, on verdict of guilty in case of Commonwealth v. Charles E. Schmunk.   Before BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ.   Affirmed.

Indictment for obtaining goods under false pretense.   Before FRAZER, J.

At the trial it appeared that the defendant in October, 1899, sent to the Western Electric Company a statement of the financial condition of the Miller Electrical Maintenance Company of Pittsburg, of which he was treasurer.   The Western Electric Company did business in New York and the Miller Electrical Maintenance Company did business in Pittsburg.   The former company relying upon the statement accepted an order from the latter company, and delivered the goods to a carrier in New York for shipment to the Miller Electrical Maintenance Company in Pittsburg.   The latter company received the goods.   It turned out that the statements made by the defendant were false.

The court charged in part as follows:
[The defendant's claim is that if an offense was committed by defendant, that offense was not committed in this state. We cannot adopt that view of the law.   In our opinion, the offense, if committed at all, was committed here, and not in New York.   The delivery of the goods in New York to a common carrier there, is not a delivery to a person living here, so far as to relieve him from prosecution, if delivered as the result of false and fraudulent representations.   The act of assembly says,

" If he shall obtain from another." We construe that word " obtain " literally. It means " to get," " to secure," " to procure," and we understand the word " obtain," as used in the act of assembly enacting the offense of false pretense, means getting actual possession, not constructive possession. In this case the possession of the goods was actually obtained by the Miller Company in this county, and, in our opinion, the courts of this county have jurisdiction of this case.] [1]

Defendant presented this point :

1. The undisputed evidence being that the goods in question alleged to have been obtained by the false pretenses of the defendant were delivered to common carriers at points without this county, in the usual course of trade, consigned to the Miller Electrical Maintenance Company, this court has no jurisdiction of the offense, and the verdict must be for the defendant. *Answer :* Refused. [2]

Verdict of guilty upon which judgment of sentence was passed.

, *Errors assigned* were (1, 2) above instructions, quoting them.

*E. W. Arthur,* of *Patterson & Arthur* and *J. McF. Carpenter,* for appellant.—It is not material where the pretenses are made, as they of themselves do not constitute a crime. They are simply the means by which the crime is accomplished. The place where the property is obtained by means of such pretense, with intent to cheat and defraud, is the place where the offense is committed. Accordingly, where a false pretense is made in one state and the property is obtained in another, the party defrauding is not amenable to the jurisdiction of the former state : Commonwealth v. Springs, 2 Leg. Gaz. 93 ; Commonwealth v. Goldstein, 3 Pa. C. C. Rep. 121 ; Commonwealth v. Balph, 18 Pa. C. C. Rep. 242 ; Commonwealth v. Mayer, 22 Pa. C. C. Rep. 38 ; People v. Sully, 5 Park. Crim. Rep. (N. Y.) 142 ; State v. Lichliter, 95 Mo. 402 (8 S. W. Repr. 720) ; State v. House, 55 Iowa, 466 (8 N. W. Repr. 307) ; Norris v. State, 25 Ohio, 217 ; Stewart v. Jessup, 51 Ind. 413 ; Connor v. State, 29 Fla. 455 (10 So. Repr. 891) ; Com. v. Van Tuyl, 1 Met. (Ky.) 1 ; U. S. v. Plympton, 4 Cranch's C. C. 309.

The delivery to a common carrier is delivery to the consignee: Com. v. Fleming, 130 Pa. 138; Phila. & R. R. R. Co. v. Wireman, 88 Pa. 264; Higgins v. Murray, 73 N. Y. 252; People v. Haynes, 14 Wend. 547; Com. v. Wood, 142 Mass. 459 (8 N. E. Repr. 432); People v. Dimick, 107 N. Y. 13 (14 N. E. Repr. 178); Ex parte Parker, 11 Neb. 309 (9 N. W. Repr. 33); Neff v. Landis, 110 Pa. 204; Sinclair v. Healy, 40 Pa. 417; Rodliff v. Dallinger, 141 Mass. 1 (4 N. E. Repr. 805).

*A. Leo Weil,* with him *John C. Haymaker,* district attorney, *W. M. Grimes,* assistant district attorney, and *Chas. M. Thorp,* for appellee.—A party who in one jurisdiction puts in operation a force which does harm in another jurisdiction is responsible in both jurisdictions for the harm: Rex v. Holmes, L. R. 12 Q. B. D. 23; Regina v. Jones, 4 Cox's C. C. 198; Regina v. Leech, 7 Cox's C. C. 100; Regina v. Cooke, 1 Fost. & F. 64; People v. Dimick, 107 N. Y. 13 (14 N. E. Repr. 178); Parker's Case, 11 Neb. 309 (9 N. W. Repr. 33); U. S. v. Plympton, 4 Cranch's C. C. 309; Com. v. Karpowski, 167 Pa. 225.

OPINION BY ORLADY, J., March 12, 1903:

The defendant resided and conducted his business in the city of Pittsburg, Allegheny county of this commonwealth, and was convicted under the 111 section of our criminal code of March 31, 1860, P. L. 382, which provides that "if any person shall by any false pretense . . . . obtain from any other person any chattel, money or valuable security with intent to cheat and defraud any person of the same, . . . . he shall be guilty of a misdemeanor." In order to establish a financial credit and commercial rating he made statements in writing, which he transmitted by regular mail service from Pittsburg to the Western Electric Company in New York city, which company accepted his order for the goods in question and delivered them to a common carrier for shipment to the defendant, who received them at Pittsburg.

The verdict of the jury conclusively establishes that the important facts in the statement mailed by the defendant were false and had been designedly and knowingly made with intent to cheat and defraud the New York Company, that the

New York Company had relied and acted upon the statement, believing it to be a truthful one, and that the defendant received the goods in Allegheny county. The verdict of guilty was fully justified by the evidence, which phase of the case is not questioned by the appellant.

The only question in controversy is the refusal of the trial judge to affirm the defendant's first point, which was as follows: "The undisputed evidence being that the goods in question alleged to have been obtained by the false pretenses of the defendant were delivered to common carriers at points without this county, in the usual course of trade, consigned to Miller Electric Maintenance Company this court has no jurisdiction of the offense and the verdict must be for the defennant." Appellant earnestly contends that there was no offense committed in this commonwealth for the reason that according to the statute the gist of the offense was obtaining the goods, and as they were delivered to the common carrier in New York, the courts of that state would have exclusive jurisdiction. In order to sustain the verdict it must be shown that he obtained the goods in Allegheny county, without regard to the place where the false representations were made. Every act that was done by the defendant was done in Allegheny county; the false statements were made there, and in securing the actual possession of the goods there, the false pretense devised by him proved successful. The transmission of the order and statements by the mail service of the government, and the carriage of the goods by the railroad company from New York to Pittsburg were means to an end selected by him to consummate his fraud,—to obtain the goods. In accepting the common carrier as his agent to receive the goods in New York and to transport them to Pittsburg, he could only obtain them, that is, have actual possession of them after they were delivered by the carrier to him at Pittsburg. He was conclusively presumed to know the law— both civil and criminal—in relation to such a transaction (1 Best on Evidence, sec. 80; Musser v. Stauffer, 178 Pa. 99), and to intend the natural and reasonable consequences of his acts. In order to induce the vendor to deliver the goods to the common carrier it was necessary for him to found that delivery upon a fraudulent and false pretense of solvency. We construe our statute to mean that the defendant shall be responsible for .

his deliberate acts in the jurisdiction where he planned to have and did in fact receive the fruits of his crime. However ingenious a fraud may be, it is none the less a fraud, and should not be held otherwise by giving his acts a legal effect which he did not intend. His purpose was to obtain and receive the goods in Pittsburg. In New York he had but a prima facie legal right to assert against them, with a civil liability for their value, though he might never obtain them.

Commonwealth v. Karpowski, 167 Pa. 225, does not control this case. There the question was one of jurisdiction between two counties of this commonwealth, and involved the construction of a statute effective in each. The false representations were made to the consignor by the defendants' messenger, and the goods were delivered to the common carrier for the defendant, all within Northampton county. It was held that the defendant might be convicted in the county where the goods were delivered to the carrier. It may be that this defendant might be convicted of this offense in New York under the statutes and decisions of that state, but we are concerned only about his conviction here. The question is not whether a contract of sale was complete in New York in order that the consignor might have maintained his action for the value of the goods, or have stopped them in transitu, or have recovered them on a rescission of the contract for fraud. It might well be that all elements of a sale were present when the goods were delivered to the common carrier and yet the defendant never obtain the goods. We do not think the constructive delivery of the goods to the common carrier, thereby transferring the title and fixing the defendants' civil liability therefor, is the controlling fact in the case, although it seems to have been so treated in many of the decisions: Norris v. State, 25 Ohio, 217; State v. Dennis, 80 Mo. 589; Stewart v. Jessup, 51 Ind. 413; People v. Adams, 3 Denio, 190.

It is said that (2 Benjamin on Sales, section 1013) there is no branch of the law more confusing than that of delivery. A review of the authorities will show the subtle distinctions to which the subject gives rise and the infinite diversity of circumstances under which its application becomes necessary in commercial law.

In the criminal case before us the vital question is, where

did the defendant complete the unlawful undertaking, if it was a completed crime in any jurisdiction? Did he obtain the actual physical possession of the goods in Allegheny county so as to have, hold and keep them as against the person who was defrauded by the false pretense? We cannot treat the word "obtain", as equivalent to a constructive delivery to a common carrier, which is under the most rigid of our decisions, but an incomplete, conditional and technical delivery at best. He might have the right of possession to them and at the same time the vendor have such right of control over them as would entitle him to arrest their final delivery. The passing of the title upon a sale of chattels depends upon the intention of the parties, to be derived from the contract and its circumstances: Commonwealth v. Hess, 148 Pa. 98. The defendant selected his own time, place and method, and from his standpoint the transaction was not completed until he secured the actual possession of the goods at Pittsburg, rather than at New York where he had but the naked legal title to them. Under our statute he is liable for the ultimate result in the jurisdiction where he completes the fraud. In order to bring a case within the statute, the following things are alone requisite: (1) a false pretense; (2) an obtaining of property by it; (3) an intent to defraud, and the correct way to determine whether any particular case falls within it is, not to consider each of these things separately, but to look at them all together; for no case is within the statute unless all of them coexist in it: 2 Russell on Crimes (1896), 510, note qq.

The right of stoppage in transitu may be asserted for the vendor's benefit after the buyer has acquired title, and right of possession and even constructive possession, but not yet actual possession: 2 Benjamin on Sales, sec. 1245.

Delivery to the carrier may denote the transfer of the property in the chattel, or transfer of the possession of the chattel, and in the latter sense may refer to the formation of the contract, or to the performance of it, but, "to obtain from another person any chattel, money or valuable security with intent to cheat or defraud any person of the same," within the meaning of our criminal statute means and refers to the final step in the succession of rights and events by which the defendant gets, secures and obtains the chattel, money, or valuable security, so as

to complete the offense, and consummates his purpose.     In support of this construction we have direct authority in Reg v. Garrett, 1 Dearsley's Crown Cases, 232.     The statute of 24 & 25 Vict., c. 96, 688, provides : "whoever shall, by any false pretense, obtain from any other person any chattel, etc.," and it was held that to sustain a conviction it must be shown that the property was obtained by the prisoner.     MAULE, J., said : " The word ' obtain' means the same as the word ' get' in its sense of ' acquire,' . . . . Whether money is obtained or not by false pretenses, does not depend upon the mode in which it is obtained but upon the person and manner by whom and in which it is received," and PARKE, J., said, " the word ' obtain' as used in the statute means not so much a defrauding or depriving another of his property, as obtaining some benefit to the party making the false pretenses.     See also 2 Roscoe Crim. Evi. sec. 499; 2 Bishop Criminal Law (Specific Offenses), sec. 460.     The discussion of this question in some of the cases is too refined for application to our plain and practical statute and opens a wide door for designing cheats.     We are not unmindful that penal statutes are to be construed strictly.     It is said that this rule is almost as old as construction itself, but whenever invoked it comes attended with qualifications and other rules of no less importance.     The object in construing penal, as well as other statutes, is to ascertain the legislative intent that constitutes the law.     If the language is clear it is conclusive.     The words must not be narrowed to the exclusion of what the legislature intended to embrace.     It must not be defeated by a forced or overstrict construction.     The proper course in all cases is to adopt that sense of the words which best harmonizes with the context and promotes in the fullest manner the policy and objects of the legislature.     The rule of strict construction is not violated by permitting the words of the statute to have their full meaning, or the more extended of two meanings, as the wider and popular, instead of the more narrow and technical one; but the words should be taken in such a sense, bent neither one way nor the other, as will best manifest the legislative intent.     See United States v. Hartwell, 6 Wall. 385; 18 U. S. Rep. L. C. P. Co. 830; Umholtz's License, 191 Pa. 177; Phila. v. Costillo, 17 Pa. Superior Ct. 339.     The word " obtain " is not a technical one, and it is the duty of the courts to con-

strue it so as to meet the mischief, and advance the remedy, but not to violate fundamental principles; to bring sense out of the words used in the statute, and not to bring sense into them; to give the words a reasonable construction: Dwarris on Statutes, p. 144; Penna. R. R. Co. v. Price, 96 Pa. 256; English on Interpretation, sec. 339.

The legislative and dictionary sense of the word " obtain ", are in harmony with the conduct of the defendant in construing it to mean that he designed, intended and meant to " obtain " these goods of the value of $3,000 at Pittsburg as the result of his false pretense, and having in fact obtained them there, the court of quarter sessions of that county had jurisdiction over the misdemeanor of which he was convicted. The judgment is affirmed, the record to be remitted to the court below that the sentence of the court may be executed.