## Commonwealth *v.* Randle, Appellant.

Argued May 3, 1935.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Homer L. Kreider,* with him *Benjamin L. Levi* and *Walter H. Compton,* for appellant.

*Walter R. Sohn,* with him *Victor Braddock* and *Karl E. Richards,* District Attorney, for appellee.

OPINION BY JAMES, J., October 2, 1935:

The indictment charges the defendant with having obtained property by false pretenses contrary to the Act of March 31, 1860, P. L. 382, par. 312, amended by the Act of April 30, 1925, P. L. 386, par. 1, (18 PS §2631). The defendant was convicted and her motions for a new trial and arrest of judgment were denied and sentence imposed; she now appeals.

Since the defendant, Helen Randle, was found guilty by the jury, we will resolve all disputed questions of fact against her. The necessary facts, for the purpose of this opinion, may be stated as follows: On July 15, 1933, Helen Randle came to the Harrisburg office of Parrish & Company and told Mr. Livingston, the local manager, that she had closed her Baltimore account and had transferred the sum of $18,000 to the Dauphin Deposit Trust Company in Harrisburg, and said she wanted to invest the money in the stock market through Mr. Livingston's office. Defendant admitted that she did not have $18,000 on deposit in the Dauphin Deposit Trust Company but denied that she had ever so stated. On July 15 and July 18, certain stock was ordered to be purchased for her. Mr. Livingston communicated

with the New York branch of his company, from which he stated he subsequently received a confirmation on their private telegraph wire that the stock had been purchased in New York at a price of $11,025. Mrs. Randle refused to receive the stock or pay for it, and on July 21, Parrish & Company were forced to sell the stock at the market, whereby Parrish & Company sustained a loss of $3,913.97. The indictment charges that it was in this manner that she, "did then and there unlawfully obtain from the said Parrish & Company chattels, moneys and valuable securities of the value of $3,913.97."

The main question raised by this appeal is whether the facts as stated are sufficient to sustain a conviction of the crime of obtaining chattels, moneys and valuable securities by false pretenses. We are constrained to answer that question negatively. "In order to bring a case within the statute, the following things are alone requisite: (1) a false pretense; (2) an obtaining of property by it; (3) an intent to defraud, and the correct way to determine whether any particular case falls within it is, not to consider each of these things separately, but to look at them together; for no case is within the statute unless all of them coexist in it": Com. v. Schmunk, 22 Pa. Superior Ct. 348, affirmed in 207 Pa. 544, 56 A. 1088. See also Com. v. Brady, 101 Pa. Superior Ct. 336; Com. v. Campbell, 116 Pa. Superior Ct. 180, 176 A. 246.

It is admitted that the certificates of stock never came into the actual possession of the defendant, but it is contended that Parrish & Company were acting as her agents and that when they received possession of the stock this technically constituted possession by the defendant. Our court has definitely ruled on this point in Com. v. Schmunk, supra. In that case the defendant, a resident of Pittsburgh, ordered goods from a concern in New York. The New York concern de-

livered the goods to a common carrier for shipment to the defendant, who received them in Pittsburgh. The defendant in that case argued that by delivering the goods to the carrier in New York, the property was then and there transferred to the defendant; that, therefore, the crime was completed in New York, and consequently the court in Allegheny County had no jurisdiction. But it was held that the constructive delivery in New York, thereby transferring the title and fixing the defendant's civil liability, was not the controlling fact. (p. 354): "Delivery to the carrier may denote the transfer of the property in the chattel, or transfer of the possession of the chattel, and in the latter sense may refer to the formation of the contract, or to the performance of it, but, 'to obtain from another person any chattel, money or valuable security with intent to cheat or defraud any person of the same,' within the meaning of our criminal statute means and refers to the *final* step in the succession of rights and events by which the defendant gets, secures and obtains the chattel, money, or valuable security, so as to complete the offense, and consummates his purpose." The court concluded that the goods were "obtained" at Pittsburgh where they actually came into the hands of the defendant. In the present case although the stock was purchased for the defendant, before she could obtain actual possession of the stock it was necessary that she make payment for it during which time Parrish & Company not only had actual possession but authority to dispose of the stock for failure to make the payment. In its final analysis the most that can be said of defendant's false pretense, was that she obtained credit but did not obtain chattels, moneys or other valuable securities, which is a vital element in constituting the offense of false pretense.

Therefore, we are led to the conclusion that since the defendant never obtained actual possession of the stock,

or the money which the company lost, the case is not within the statute. Furthermore, if we should adopt the Commonwealth's suggestion that when Parrish & Company obtained possession of the stock there was a constructive possession in the defendant, we find ourselves unhappily on the other equally sharp horn of the dilemma; namely, that under that reasoning the crime was consummated in New York where Parrish & Company bought and received the stock and later sold it, and consequently the courts of Pennsylvania are without jurisdiction to try the offense.

The two cases cited by the Commonwealth in support of its contention are clearly distinguishable. In C. Clothier Jones v. Adams, 98 Pa. Superior Ct. 246, it is to be noted that the broker brought a *civil* suit in assumpsit to recover the difference between the purchase price and the selling price of stock which the defendant ordered but refused to take. As we have said above, the transfer of technical title may be conceded so far as the formation or performance of a contract is concerned. But the case at bar is a criminal action. It would indeed be contrary to the principles of statutory construction if we were to employ the legal fiction of possession in the defendant in order to widen the scope of the statute.

In Com. v. Nixon, 94 Pa. Superior Ct. 333, the defendant, a stock broker, was convicted of fraudulent conversion of stock which in fact had never come into the possession of the customer. But the elements which constitute the crime of fraudulent conversion obviously differ from those which constitute the crime of cheating by false pretense. It is conceded that in the case at bar as well as in the Nixon case, the *broker* had actual physical possession of the certificates of stock, but in the case at bar we must go further and show that the *customer* then "obtained" the property. The Nixon case merely required that the broker convert

the certificates which he possessed to his own use. Therefore, the court in that case was not concerned with whether or not the *customer* ever had possession, and its statement to that effect is quite proper, but it has no bearing whatever on the case now before us.

In view of our conclusion that the crime charged under the indictment had not been proven, we shall not discuss the other questions raised. The second and ninth assignments of error are sustained.

Judgment reversed and the defendant discharged without day.