## Commonwealth *v.* Prep, Appellant.

444

Argued March 24, 1958. Before RHODES, P. J., GUN-THER, WRIGHT, WOODSIDE, and ERVIN, JJ. (HIRT and WATKINS, JJ., absent).

Before

KREIDER, J.

*James W. Evans,* with him *David S. Kohn,* for appellant.

*Huette F. Dowling,* District Attorney, with him *Mary E. Hoerner,* Assistant District Attorney, *Vincent G. Panati,* Assistant Attorney General, *Victor H. Wright,* Deputy Attorney General, and *Thomas D. McBride,* Attorney General, for appellee.

OPINION BY RHODES, P. J., June 12, 1958:

These appeals involve the jurisdiction of the Court of Quarter Sessions of Dauphin County to indict and try defendant for the crimes of cheating by fraudulent pretenses[1] and conspiracy to cheat and defraud the De-

---

[1] The crime of cheating by fraudulent pretenses contemplates the false representation of an existing fact which is calculated and intended to deceive, and which does actually deceive, and by means of which one person obtains value from another without compensation. *Com. v. Sherman,* 182 Pa. Superior Ct. 319, 325, 126 A. 2d 480.

partment of Highways of the Commonwealth of Pennsylvania in connection with the sale and delivery of cinders.

Victor Prep (also known as Victor Patrikonis), who had a contract to supply cinders to the Department of Highways in York County, and one John W. Crerand, who was superintendent of highways in York County, formed a criminal conspiracy in York County whereby Prep would provide Crerand with false delivery slips to be sent together with valid delivery slips to the Department of Highways at Harrisburg for approval and clearance through the state agencies and the issuance of checks to Prep by the Commonwealth in payment therefor. The object was for Prep to receive payment under the contract for more cinders than he actually delivered. Prep received $2.14 per ton on the basis of the false delivery slips of which amount Crerand was to receive $1. The fraudulent scheme temporarily succeeded, with the result that Prep received overpayments in excess of $5,200. Crerand received $2,500 from Prep in accordance with their agreement. The scheme was discovered; whereupon Prep and Crerand were indicted in the Court of Quarter Sessions of Dauphin County to Nos. 151, 158, and 159, September Sessions, 1957, for cheating by fraudulent pretenses, and at No. 162, September Sessions, 1957, for conspiracy to cheat and defraud the Department of Highways. Crerand pleaded guilty to all indictments, made full restitution of all moneys unlawfully obtained by him, and became a witness for the Commonwealth in the trial of Prep. A jury convicted Prep on all bills of indictment. From the sentences imposed after the refusal of his motions in arrest of judgment and for a new trial, Prep appeals and raises only the question of jurisdiction.

*Fraudulent Pretenses.* The crime of obtaining any chattel, money, or valuable security by fraudulent pretenses under section 836 of The Penal Code of June 24, 1939, P. L. 872, as amended, 18 PS §4836, is completed when there coexists the following elements: (1) a false pretense; (2) an obtaining of property of value thereby; and (3) an intent to cheat and defraud. *Com. v. Hancock,* 177 Pa. Superior Ct. 585, 592, 112 A. 2d 407. In the present case the undisputed evidence established that Prep furnished to Crerand in York County the false delivery slips which Prep had prepared. Crerand sent these false slips, together with the valid slips or invoices, to the Department of Highways at Harrisburg, where they were approved by the finance officer of the department, and certified by the Auditor General to the State Treasurer who in turn signed and issued Commonwealth checks payable to the order of Prep. The checks representing payments from the Commonwealth for cinders fraudulently purporting to have been delivered were placed in the mail at Harrisburg and were addressed to Prep at Frackville, Schuylkill County, where they were received by him.

A prosecution for the crime of cheating by fraudulent pretenses should be brought in the county where the offense is completed, that is, where the chattel, money, or valuable security is actually obtained by the defendant. *Com. v. Hancock,* supra, 177 Pa. Superior Ct. 585, 593, 112 A. 2d 407; *Com. v. Tarsnane,* 170 Pa. Superior Ct. 265, 267, 85 A. 2d 606. The court below concluded that the checks were obtained by Prep when they were placed in the mail. Prep contends that, although the checks were mailed in Harrisburg, he did not actually receive them until the mail was delivered to him in Frackville. He relies principally upon *Com. v. Schmunk,* 22 Pa. Superior Ct. 348, affirmed 207 Pa. 544, 56 A. 1088. In the *Schmunk* case the defendant,

who resided in Pittsburgh where he conducted his business, sent a written statement to a company in New York City concerning his financial status in reliance upon which the company in New York City accepted his order for certain goods and delivered them to a common carrier for shipment to the defendant at Pittsburgh. The defendant was tried in Allegheny County, and he contended that the courts of New York had exclusive jurisdiction because the goods were obtained by him in New York City when the victim placed them in the hands of the common carrier. This Court and our Supreme Court rejected the contention and held that defendant was within the jurisdiction of the Court of Quarter Sessions of Allegheny County notwithstanding that he may also have been liable in New York for the same offense. It was held that defendant actually obtained the goods in Allegheny County when they were delivered by the carrier to defendant since the victim in New York could have stopped the goods in transitu. Prep concludes therefore that the Post Office Department acted in a manner similar to the common carrier in the *Schmunk* case, and that the checks were not actually obtained until the mail was delivered. But assuming that the analogy is acceptable, the *Schmunk* case does not hold that exclusive jurisdiction of the crime is in the county where the goods are actually obtained by defendant from a common carrier. As between counties within the Commonwealth, jurisdiction may be exercised also in the county where the goods were delivered to the common carrier. It was so held in *Com. v. Karpowski*, 167 Pa. 225, 31 A. 572, and this case was reconciled in *Com. v. Schmunk*, supra, 22 Pa. Superior Ct. 348, 353. However, this is not a common carrier case.

We recognize that the crime of cheating by fraudulent pretenses is not completed until property is ob-

tained by the defendant, but it is not essential for purposes of jurisdiction that the prosecution be brought only in the county in which the defendant *in person* actually obtains possession of the object. Jurisdiction has been held to rest where the circumstances show that for all practical purposes the object has been placed within the control of defendant. In *Com. v. Hancock,* supra, 177 Pa. Superior Ct. 585, 112 A. 2d 407, we held that the prosecution was properly brought in Dauphin County even though the defendant did not in person actually come into possession of the goods until their delivery to him in Schuylkill County. In the *Hancock* case the defendant approached a lumber dealer in Dauphin County and placed a large order for lumber on credit on the basis of certain false representations. The lumber was to be delivered to defendant at a supposed building project near Ashland in Schuylkill County. The lumber dealer did not have in his stock all the lumber specified; he arranged to buy from others the items which he could not supply. The lumber dealer purchased the additional lumber at several places, loaded the items on his truck and conveyed them to the job site in Schuylkill County where they were unloaded for the defendant. The prosecution was brought in Dauphin County and defendant raised the question of jurisdiction. We concluded that the lumber dealer in making the special purchases for the defendant and not for the purpose of augmenting his general stock was acting as the agent of defendant, and that when the lumber was received by him in Dauphin County it was received for the defendant and thus was obtained by the defendant for purposes of conferring jurisdiction upon the Court of Quarter Sessions of Dauphin County.

We have no doubt that jurisdiction to try such offense does not depend solely upon the location where

the defendant in person actually obtains the goods. The question in the present case is whether the mailing of the checks to defendant by posting them in Dauphin County was a delivery to defendant or his agent sufficient to confer jurisdiction upon the Court of Quarter Sessions of Dauphin County. In our opinion it was. Prep was familiar with the Commonwealth's system of purchasing cinders and paying for them. He formed his conspiracy with Crerand to utilize the complexities of that system in his attempt to conceal his fraud. He gave false delivery slips to Crerand for the sole purpose of having them submitted by Crerand to his superiors at the Department of Highways in Harrisburg for approval by it and by the other departments and agencies and for the ultimate payment by the issuance of the checks by the State Treasurer at Harrisburg. This relationship between Prep and the Commonwealth as parties to the cinder contract forms the basis for the only logical conclusion that the transaction was completed when the checks were mailed. It is recognized that an offer is not considered communicated until actually received but that acceptance of that offer is completed when it is mailed. See *Linn v. Employers Reinsurance Corporation,* 392 Pa. 58, 61, 139 A. 2d 638. Prep represented that he had delivered the quantity of cinders appearing on the false slips which were submitted to the Department of Highways at Harrisburg in the normal course of business. In due course the Commonwealth acted upon the false representation and made payment by mailing the checks to Prep. The transaction was complete when the checks were mailed. The following language used in *United States v. Thayer,* 209 U. S. 39, 43, 28 S. Ct. 426, 52 L. Ed. 673, 675, is applicable: ". . . upon an indictment for obtaining money by false pretenses, the crime was held to have been committed at the place where

drafts were put into the post by the defrauded person. Com. v. Wood, 142 Mass. 459, 462, 8 N. E. 432; Reg. v. Jones, 4 Cox, C.C. 198. But these stand on the analogy of the acceptance by mail of an offer, . . . A relation already existed between the parties, and it is because of that relation that posting the letter made the transaction complete."[2] It follows that the Court of Quarter Sessions of Dauphin County had jurisdiction to indict and try defendant on the charges of obtaining chattels, money, or valuable securities by fraudulent pretenses.

*Conspiracy.* In *Com. v. Mezick,* 147 Pa. Superior Ct. 410, 413, 24 A. 2d 762, 764, we said: "But it is well settled that prosecution for criminal conspiracy may be brought in the county where the unlawful combination or confederation was formed, *or* in any county where an overt act was committed by any of the conspirators in furtherance of that unlawful combination or confederacy." Prep contends that Dauphin County had no jurisdiction to try him on the charge of conspiracy since, under the admitted facts, it appears that the conspiracy was formed in York County, that Prep gave the false and fraudulent delivery slips to Crerand in York County, and that the checks in payment thereof were received by Prep in Schuylkill County. It is

---

[2] It has been recognized that "Where, induced by false pretenses, one transmits by mail to accused money, drafts, or other writings, such mailing is a delivery to the postmaster as the agent of accused, to be forwarded to him, and the offense is complete where the letter is mailed, and is indictable at such place; . . ." 22 C.J.S., Criminal Law, §185n, p. 287. See *Bozarth v. State,* 56 Okl. Cr. 424, 41 P. 2d 924; *Updike v. People,* 92 Colo. 125, 18 P. 2d 472; *Com. v. Wood,* 142 Mass. 459, 8 N.E. 432; *State v. Briggs,* 74 Kan. 377, 86 P. 447, 7 L.R.A. (N.S.) 278; Annotation, 141 A.L.R. 210, 239-241; 22 Am. Jur., False Pretenses, §89, p. 492; 22 C.J.S., Criminal Law, §136k, p. 223.

argued that the conspiracy was not formed in Dauphin County, and that there were no overt acts committed by Prep or his fellow conspirator Crerand in Dauphin County. "An *overt* act is distinguished from that which rests merely in *intention* or design; and as used in the law of conspiracy it means an act done in furtherance of the object of the conspiracy." *Com. v. Mezick,* supra, 147 Pa. Superior Ct. 410, 413, 24 A. 2d 762, 764. In furtherance of the criminal conspiracy, Prep and Crerand caused the false delivery slips to be mailed to the Department of Highways at Harrisburg where the department acted upon the false representation and the checks were thereafter placed in the mail addressed to Prep at Frackville. It may be that mailing the false delivery slips in York County constituted making a false representation in York County (*Com. v. Schmunk,* supra, 207 Pa. 544, 546, 56 A. 1088), but it does not mean that the agency put in motion by Prep and Crerand ceased in York County. It is a well established theory of the law that, where one puts in force an agency for the commission of crime, he, in legal contemplation, accompanies the same to the point where it becomes effectual; consequently, in many circumstances one may become liable to punishment in a particular jurisdiction while his personal presence is elsewhere, and in this way he may even commit an offense against a state or county upon whose soil he has never set his foot. *Simpson v. State,* 92 Ga. 41, 17 S. E. 984, 985. See *Com. v. Gillespie,* 7 S. & R. 469, 477. The false representation set in motion by Prep and Crerand in York County was completed in Dauphin County when it was received and there acted upon by the Department of Highways. See *Com. v. Karpowski,* supra, 167 Pa. 225, 227, 228, 31 A. 572. Moreover, for jurisdictional purposes the checks were obtained by Prep in Dauphin County when they were placed in

the mail by the Commonwealth; they were admittedly received by him in due course.

The judgments of sentence are affirmed, and it is ordered that appellant appear in the court below at such time as he may there be called, and that he be by that court committed until he has complied with his sentences or any part thereof which had not been performed at the time the appeals were made a supersedeas.

WATKINS, J., took no part in the consideration or decision of this case.