# Commonwealth *v.* Biddle, Appellant (No. 1).

*Criminal law—Murder—Entry of dwelling house with intent to commit burglary.*

Where three burglars, each armed with deadly weapons, enter a dwelling house with intent to commit burglary, and one of them shoots and kills the owner who attempts to interfere with their operations, all three are guilty of murder in the first degree, and it is immaterial that at the time of the killing they had not then accomplished their purpose of robbing the house.

*Criminal law—Murder—Entry of plea of guilty in open court—Joint indictment.*

Where three persons are jointly indicted for the same murder, the entry of plea of guilty in open court by one of the prisoners in presence of the jury which tries another of the prisoners, is not reversible error, where it appears that the prisoner pleading guilty testifies to all the circumstances of the crime.

*Criminal law—Murder—Evidence—Joint indictment.*

Where three burglars are jointly indicted for a murder committed in the act of burglary, one of the prisoners may in a separate trial of another of the prisoners, be permitted to testify as to the criminal concert of the three long anterior to the particular crime under investigation.

In such a case the prisoner testifying may give a conversation between himself and the deceased which took place prior to the burglary, and not in the presence of the other two prisoners, but by which the information was obtained upon which all three subsequently acted.

*Criminal law—Murder—Trial—Rulings on evidence.*

In the trial of a murder case it is not wise for the trial judge rigidly to exclude evidence because its materiality is not clearly obvious. It is better to give the benefit of the doubt to the prisoner even in rulings on trivial evidence. An impregnable case for the commonwealth should not be placed in peril of a reversal by technical rulings on evidence which could not weaken the commonwealth's case.

*Criminal law—Practice, O. & T.*

Where two persons are indicted jointly for the same murder, on the separate trial of one of the prisoners, it is within the discretion of the court, after the commonwealth's case has closed, to permit the case to be opened, and the record of one of the other prisoner's plea of guilty to be offered in evidence.

Argued Oct. 28, 1901. Appeal, No. 125, Oct. T., 1901, by defendant, from judgment of O. & T., Allegheny Co., March T., 1901, No. 28, on verdict of guilty of murder in the first degree

in case of Commonwealth v. John Biddle, alias John Wright. Before McCollum, C. J., Mitchell, Dean, Fell, Brown, Mestrezat and Potter, JJ. Affirmed.

Indictment for murder. Before Shafer, J.

The circumstances of the crime are stated in the opinion of the Supreme Court.

*Errors assigned* were as follows:

1. In permitting Walter Dorman to be arraigned and enter his plea of guilty in open court in the presence of the jury before which John Biddle was to be tried separately for the murder of Thomas D. Kahney.

2. In permitting the commonwealth to examine Walter Dorman regarding his former relations and associations with John and Edward Biddle at times and in matters not connected with the killing of Thomas D. Kahney.

3. In permitting Walter Dorman to relate conversations had between Thomas D. Kahney and himself on the day preceding the tragedy, at which conversation neither John Biddle nor Edward Biddle was present, and also in permitting Mrs. Kahney to testify that she overheard said conversation, although admitting that she did not know who the party was in conversation with her husband.

4. In refusing defendant's counsel, during the cross-examination of Mrs. Pendergrast, permission to ask her how certain men whom she had seen in the court room within twenty-four hours were dressed, she having based her identification of the defendant partially upon the manner in which he was attired on the day preceding the tragedy.

5. In refusing to permit the witness Ollinger on cross-examination to describe the face of Edward Biddle as it appeared on the day of the trial, the witness having just been taken to the opposite side of the court room for the purpose of closely scrutinizing the features of the said Edward Biddle who was seated in the prisoners' dock, and whose face was noticeably disfigured since the time the witness, Ollinger, claims to have seen him on the morning of the tragedy, and said Ollinger having already given to the jury a description of the face of the man he saw on that morning.

6. In not permitting defendant's counsel to cross-examine Philip Demmel in detail regarding a certain shoe with which he made investigation and measurements of footprints surrounding the Kahney house immediately following the tragedy, and in refusing to permit defendant's counsel to ask Demmel whether he procured said shoe in the room or on the premises occupied by John Biddle, the defendant, the said Demmel having been asked by the district attorney whether or not he came into the possession of the clothing of Edward Biddle, and especially the clothing alleged to have been worn by Edward Biddle on the night of the tragedy, and being asked furthermore by the district attorney what he did with said clothing.

7. In permitting the commonwealth to reopen its case and offer in evidence the record of the court showing Walter Dorman's plea of guilty, in the case of the Commonwealth versus Dorman, after the commonwealth had formally rested, and after the defense had formally opened its case and outlined to the jury what it proposed to prove.

8. In refusing the second point submitted by defendant's counsel, i. e.: "2d. Unless it has been established beyond a reasonable doubt that at the very moment Thomas D. Kahney received the wound of which he died, the defendant, John Biddle, was actually engaged in the perpetration or attempt to perpetrate a burglary, the verdict should not be guilty, unless the jury find that John Biddle fired the shot."

9. In refusing the fourth point submitted by defendant's counsel, i. e.: "4th. If the jury suspect that Dorman's motive in testifying as he did was to save his own life, and while under the influence or control of that motive he misstated material facts to the detriment of the defendant, John Biddle, it would be the duty of the jury to give the defendant the benefit of the doubt arising from such suspicion and render a verdict of not guilty."

10. In refusing the sixth point submitted by defendant's counsel, i. e.: "6th. Nothing having been stolen from the Kahney residence on the night of the tragedy, the jury, before rendering its verdict, must determine when the attempt to commit the burglary ceased, and if a reasonable doubt exists as to whether it ceased on the part of John Biddle before or after the shooting, the verdict should be not guilty."

*James Francis Burke*, with him *Harrison Bock*, for appellant.

*John C. Haymaker*, district attorney, with him *John C. Robb, Jr.*, first assistant district attorney.

OPINION BY MR. JUSTICE DEAN, November 4, 1901:

The appellants, John Biddle, Edward Biddle and Walter Dorman, were charged jointly with the murder of Thomas D. Kahney, a resident of Pittsburg. Dorman entered a plea of guilty; the two Biddles pleaded not guilty and demanded a severance in trial which was allowed. Both were convicted of murder. of the first degree, and sentenced accordingly We have now before us the appeal of John Biddle with the accompanying record and typewritten evidence.

It appears from the evidence and the admissions of Dorman, that all three were professional burglars In January, 1901, all, had about that time become residents of Pittsburg and were intimate acquaintances. They lived in two houses but a short distance apart on Bedford and Fulton streets on the north side. About the middle of the day on April 10, 1901, they proceeded together across the river to the south side to look out for dwellings they might successfully enter at night; the house of Thomas D. Kahney, a grocer, attracted their attention; Dorman entered it and pretended to be engaged in obtaining names for a directory; he drew Kahney into conversation and soon learned from him that his family consisted of himself, wife and son, the latter being about twelve years of age; he also learned that the family occupied only the first floor, consisting of a kitchen, the store and two bedrooms. The two Biddles remained outside while Dorman was making his investigations; when these were ended, he rejoined them and they then agreed to forcibly enter the house and rob Kahney that night; they then returned to their lodgings, which after dark they left, reaching Kahney's about 10 or 11 o'clock at night. From a vacant lot adjoining they watched the movements of the inmates until about 2 o'clock the next morning; one of them had a brace and bit; John Biddle had a club and revolver; Edward Biddle had two revolvers, Dorman one revolver and a bottle of chloroform. With the brace and bit they opened the outside shutters, raised the window and entered the kitchen. The boy happened to be ill

that night and Mrs. Kahney had lain down on the foot of his bed with her clothes on and fallen asleep leaving an oil lamp burning; her husband for that night slept by himself in the adjoining bedroom. The three burglars were masked; they proceeded from the kitchen to the room occupied by Mrs. Kahney and her sick boy; Dorman went to the bed and undertook to administer to her the chloroform; Edward Biddle covered the boy with his two revolvers; John Biddle stood at the foot of the bed near the door to the room in which the husband slept. Dorman in attempting to stupify Mrs. Kahney with the chloroform waked her and a struggle between them followed; this waked the husband who got up and in his night clothes started to enter his wife's room, but just as he got in the doorway between the rooms, John Biddle shot him dead with his revolver, the ball piercing his heart. The burglars immediately fled; some distance out from the city they boarded an in-going street car, reaching their rooms about 7 o'clock the same morning; they were arrested that day.

It is scarcely worth while to discuss the degree of this murder. The statute settles that:

"All murder which shall be . . . . committed in the perpetration of or attempt to perpetrate any arson, rape, robbery or burglary shall be deemed murder of the first degree." It is just as certainly established that Kahney was killed by these men in the perpetration of a burglary as it is established that he was killed at all. And it is wholly immaterial that at the time he was killed they had not then accomplished their purpose of robbing the house; the felonious entry of the dwelling was fully complete when the fatal shot was fired, and so declares in unmistakable language the 135th section of the act of 1860, although they appropriated not one cent's worth of Kahney's property. Nor is it material which of the three fired the fatal shot; all participated in the common purpose, the felonious entry, and from the fact that all were armed with deadly weapons, a part of that purpose undoubtedly was to commit murder if necessary to carry out the purpose or prevent discovery. By the 44th section of our act of 1860, each one is triable and punishable as if he had fired the pistol. Leaving out of view the purely technical objections of defendant's counsel to some of the court's rulings on evidence, independently

of these, the facts as we have stated them and the law as we have announced it, are established beyond controversy and consequently, the guilt of the prisoner is established beyond doubt. We will now pass briefly on the formal assignments of error. It is objected that the court erred in permitting Dorman to enter his plea of guilty in open court in presence of the jury which tried John Biddle, as such an act would tend to prejudice the jury against Biddle. We do not see how this plea would prejudice him any more than Dorman's sworn testimony delivered from the witness stand, giving the whole history of the crime with all its brutal details of circumstances and time; indeed it could not have prejudiced him to so great a degree, for Dorman on the witness stand not only admitted his own guilt but testified positively that John Biddle and Edward participated fully in his guilt. The assignment is without merit.

The second assignment complains that the court permitted Dorman to be examined concerning his former associations with the two Biddles. This action of the court was proper; the commonwealth sought to show the criminal concert of the three long anterior to this particular crime ; that all were moved by a common criminal purpose from their first acquaintance down to their arrest. This was an important part of the commonwealth's case, although not an essential part; at all events it served to corroborate and strengthen the accomplice's Dorman's, testimony.

The third assignment complains that Dorman was permitted to give the conversation between him and Kahney in the absence of the Biddles when Dorman pretended he was securing data for a directory. This was clearly right. TheBiddles, as shown by their subsequent conduct, had the very information which Kahney gave Dorman; how did they get it unless Dorman was acting for all three in preparing for the commission of the crime?

The fourth, fifth and sixth assignments of error all relate to the refusal of the court to permit what in the mind of the court could lead to no conclusion having any bearing on the guilt or innocence of the prisoner. While we are very clear the examination attempted could have resulted in no benefit to the prisoner, no matter what the answer, we do not think it wise in

such cases to rigidly exclude evidence because its materiality is not clearly obvious ; it is better to give the benefit of the doubt to the prisoner, even in rulings on trivial evidence. An impregnable case such as the commonwealth so manifestly presented should not be placed in peril of a reversal by technical rulings on evidence which could not have weakened the commonwealth's case. If the answers had been in all respects such as defendant's counsel hoped for, they would only have tended to show that the witnesses were lacking in descriptive powers or retentive memory as to the color of prisoner's clothes. No possible harm resulted to the prisoner from the rulings.

The seventh assignment complains that the court, after the commonwealth had closed her case, permitted it to be opened and the record of Dorman's plea of guilty to be offered in evidence. This was in the discretion of the court; unless this discretion was arbitrarily exercised or abused we will not interfere. The commonwealth might reasonably anticipate that the defense would at least insinuate that Dorman testified in the expectation of a nolle prosequi as to him; to answer such insinuation the admission of the record showed that he had pleaded guilty of record; was in no better situation than Biddle would be if convicted. The fact was hardly of enough gravity to warrant this controversy over it; the record as we have already noticed in discussing the first assignment could not equal the effect of Dorman's sworn testimony, and therefore could not have prejudiced the prisoner. We overrule this assignment.

The eighth, ninth and tenth assignments have no merit which warrants discussion; they are not correct as propositions of law, and if they were there is no evidence to which they are applicable.

On evidence indisputable, leaving no room for the least doubt, the jury has found defendant guilty of a most cruel murder and he ought to pay the penalty. The judgment is affirmed and it is directed that the record be remitted to the oyer and terminer that the judgment may be carried into effect accordingly.