Commonwealth *v.* Sheaffer, Appellant.

52

Argued October 27, 1941.

Before KELLER, P. J., CUNNINGHAM, BALD-
RIGE, STADTFELD, RHODES and HIRT, JJ.

*Harry M. Berkowitz,* for appellant.

*John P. Boland,* Assistant District Attorney, with
him *John H. Maurer,* Acting District Attorney, for ap-
pellee.

Opinion by Baldrige, J., December 18, 1941:

The appellant, Grace Luetta Sheaffer, with other defendants, was indicted under various bills of indictment charging the fraudulent uttering and publishing as true of false instruments, to wit, certain pages contained in: (1) an old family Bible printed in the German language; and (2) the Sheaffer family Bible. All the defendants were convicted. The appellant, under indictment No. 1135, September Term, 1939, charging the fraudulent uttering of the German Bible, was sentenced to pay a fine of $1,000 and to be imprisoned for a period of one year and ninety-three days to date from commitment in the State Industrial School for Women at Muncy. Sentence was suspended on each of the other bills numbered 1136, 1162, to 1170 inclusive, of September Term, 1939. This appeal followed.

These prosecutions grew out of claims filed by the appellant and her codefendants in the estate of Henrietta E. Garrett, who died November 16, 1930, leaving a will disposing of but $62,500 of her estate which had an estimated value of over $19,500,000. The Orphans' Court of Philadelphia County appointed a special master and examiner to ascertain if the testatrix had any heirs or next of kin entitled to the residue under the intestate laws. When it became known that this large sum of money was available for distribution among relatives upwards of 17,000 persons claimed relationship and each has tried to convince the master of his or her right to share in this fund. Isaac Newton Sheaffer, one of the claimants, asserted that he, as an illegitimate son of the deceased, is entitled to her entire estate. Later, the defendants in the above indictments filed claims. When the testimony of Isaac Newton Sheaffer's claim was being heard they all appeared as witnesses in his behalf. The alleged forged entries of the purported family record in the Bibles were made in an attempt to establish his claim. The appellant as-

serted her right to participate in the funds as a niece of Mrs. Garrett stating that she was born February 14, 1884, and is a daughter of Ellen Jane Palmer Sheaffer and Benjamin Franklin Sheaffer; that her father, who was born January 29, 1851, was the brother of Henrietta E. Garrett, whose birth date was November 25, 1849.

The appellant's first complaint is that as there was no indictment charging her with conspiracy the court below erred in admitting the testimony of Martin Gross respecting declarations and admissions of Samuel Miller, a codefendant, made in her absence.

Samuel Miller had testified to certain facts concerning the German family Bible. For the purpose of attacking his credibility the commonwealth called Gross as a witness. He testified that he saw the German family Bible in Harrisburg when it was in the possession of the son of Samuel Miller, the father not being present. Later, in his own home in Harrisburg when Samuel Miller and a Mr. Maxton were present, he read and interpreted the Bible to them. He did not relate, however, any conversations that had occurred. Even if Gross had repeated statements made by Miller in the absence of the appellant that testimony would have been admissible. The commonwealth proved that Isaac Newton Sheaffer and the other defendants, including Grace Luetta Sheaffer, had filed their claims. They were represented by the same attorney and from time to time family meetings were held when the testimony to be presented before the master was discussed. We glean from the records, which have been only partially printed, that arrangements had been made for all the members of this group to be rewarded if Isaac was successful in establishing his claim. Furthermore, this appellant had been designated by Isaac to act in his behalf in finding evidence to support his claim, all of which tended to establish a common intention, plan, and design of the defendants.

It is true that the general rule is that statements

are only admissible against the party who makes them, but where, as here, there is proof of a combination between several persons for an unlawful purpose, any act done by one party in pursuance of a concerted plan with reference to the crime charged, is the act of all and the proof of such act is evidence against any and all of the others who were engaged in the unlawful common plan and design: Wharton's Criminal Evidence, §698, p. 1430. This rule applies notwithstanding the indictments do not charge a conspiracy: *Com. v. Biddle,* 200 Pa. 640, 50 A. 262; *Com. v. Spardute,* 278 Pa. 37, 49, 122 A. 161; 22 C. J. S. 1293, §756.

"It is not necessary that there should be proof [of concerted action] sufficient to convict accused and the person whose acts or declarations are sought to be shown of the crime of conspiracy as defined by statute; it is sufficient if the evidence shows that accused and the actor or declarant were acting with a common purpose and design, even though it does not appear that there was a previous combination or confederacy to commit the particular offense." 22 C. J. S. 1296, §758.

No error was committed in the admission of the testimony of Martin Gross.

The next complaint is to the admission in evidence of commonwealth's exhibits 31, 32, and 38.

Exhibit 31 was an application of Isaac Newton Sheaffer, a codefendant, to become a member of the Loyal Order of Moose, and 32 was a certified copy of application for his operator's license in the state of Delaware. These two exhibits contained signed statements made by Sheaffer giving a birth date for himself other than the one given in the Sheaffer family Bible. Exhibit 38 is a photostatic copy of Mrs. Ellen Taylor's application for membership in the Daughters of the American Revolution, wherein she gave the birth date of her father, Benjamin Franklin Sheaffer, an alleged brother of Henrietta E. Garrett, as January 29, 1850. If this date is correct it would have been impossible for Hen-

rietta E. Garrett, if a sister, to have been born November 25, 1849. The record discloses that Mrs. Taylor gave information previously at the hearing that her father was born January 29, 1851.

It is quite apparent that these exhibits were offered for the purpose of attacking the credibility of the defendants in question. The trial judge might very well have expressly confined their admission to that purpose, for which they were clearly admissible. In a case of this character, involving an alleged concerted, systematic plan to deceive and defraud, considerable liberality is given to the court in passing upon the admission of evidence. In any event, we think that this appellant was not harmed by the admission of this evidence, which did not have a direct bearing on her guilt or innocence, in a case lasting over three weeks.

The appellant finds fault with the court's refusal to sustain its demurrer, contending that the evidence offered in support of indictment 1135, which pertains to the German family Bible, was not sufficient to submit to the jury for deliberation. It is argued that the alleged false and fraudulent writing contained therein was brought into the proceedings before the orphans' court at the instance and direction of the master, who was then taking testimony, and not as the result of appellant's own volition. The appellant asserts that the master was informed prior to November 10, 1938, that this German family Bible had been falsely prepared at her direction on October 9 and 10 by Alfred Cohn, Esq., of Lancaster, a lawyer who had recently come from Germany; that when she was called for cross-examination before the master when the authorities had knowledge respecting the entries in question; that she was convicted of the consummated offense of fraudulently uttering a false instrument and not of attempting to utter; that the Bible produced at the instance of the master or the state attorney, under the circumstances referred to, did not establish the crime charged.

It was shown at this trial that when the appellant was being cross-examined during the hearing before the master and examiner on November 10, 1938, she was asked whether she could produce any photographs of her father or mother or other members of her family, or other documents to support her claim. She replied:

"I think I can get you quite a number of Bibles. I think there are quite a number of family Bibles."

Her cross-examination continued as follows:

"Q. ...... I am not asking you to gather up everything in your family that might be covered by the terminology of any call that has been made or is here repeated. Please understand clearly that I am merely giving you an opportunity to present and offer in evidence, yourself, anything of probative value. Is that clear to you?

"A. Yes, that is clear to me.

"Q. There is nothing in those Bibles that you care to produce? ......

"A. There are some Bibles that have come to the surface just recently which I think will be produced and will be of considerable evidential value, which I did not know of earlier—I knew of the existence of them, but I could not locate them.

\* \* \* \* \*

"Q. You say they were in the family but you could not obtain them?

"A. Yes, I did not know where they were. I sent out a general order for all Bibles to be searched for and this one particular Bible, which had a record of the family from 1710 down, and it is still in existence.

\* \* \* \* \*

"Q. How do you know it is in existence?

"A. I know it is.

"Q. Have you seen it?

"A. Yes."

She explained that Samuel Miller, her cousin, had the Bible but did not produce it when he was on the

stand as it was in the possession of his wife, who had died but a month previously and he did not know where she had it. Her testimony continues:

"Q. Did you want to put it in as part of your case?

"A. That is what I wanted to do.

"Q. When were you going to do it?

"A. Whenever it was opportune.

"The Master: If you want to put that in evidence . . . . . .

"The Witness: Yes, I shall be glad to drive to Harrisburg and get the book myself.

"The Master: How long will it take?

"The Witness: I will take Mr. Koehler. I can make it in two and a half hours each way. I can get back here in five hours."

It thus clearly appears that she volunteered to get this Bible and that it was her purpose and desire to put it in evidence when permitted. Later she, in fact, did offer the forged record in evidence through her attorney, which, of course, was with her full knowledge and authority. It is true that an intention to defraud is an ingredient of the offense of uttering or publishing a forged instrument, but it is not essential that the fraud shall have been successful, or that the party to whom the forged instrument was offered was deceived: *Commonwealth v. Bond* (Mass.) 74 N. E. 293; *State v. Hahn*, 38 La. Ann. 169; 1 Wharton's Criminal Law, §705, 8th Ed. The court was warranted in not sustaining the demurrer.

Nor can the argument of the appellant that a conviction cannot stand as no proof was offered to establish her intention to defraud any particular person prevail. It was not necessary to prove an intent on the part of this appellant to defraud a certain individual; it was sufficient to show that the defendant did the act charged with an intent to defraud: *Commonwealth v. McClure*, 86 Pa. 353. The record clearly shows, however, that the Commonwealth of Pennsylvania made claim to this

fund, alleging that there were no legal heirs entitled thereto. Her alleged criminal act was unquestionably prejudicial to its interest.

The appellant contends, also, that the judge erroneously charged the jury in stating: "...... that having forged the Bible, all that was necessary for the defendant to do was to offer it." We find, also, in referring to the judge's charge, the following language: "Now as to the German Bible, the witness Cohn said that he wrote this up, the family record in this Bible, at Grace Sheaffer's direction. If he did so, and Grace then presented it to the Master to substantiate Isaac Newton Sheaffer's claim, then she offered that German Bible with the family record in the Bible knowing the record to be forged with the intention to defraud, and she is guilty on that charge. If it was not forged, she is not guilty. ...... If Cohn did not forge the Bible, then you can't convict Grace Sheaffer anyhow, so you don't have to worry about it there, in connection with that German Bible. If Cohn did forge the Bible, then we have no evidence that any of the police officers knew anything about this until Cohn told them, and by that time Grace Sheaffer had already had the Bible forged and the only remaining thing for her to do was to offer it in evidence, and if they simply sat by and let her offer it in evidence, that would not be entrapment. ......"

These instructions were fully warranted by the evidence and furnished no reason for criticism.

We come now to the persistently present complaint that the court erred in defining reasonable doubt. The trial judge in the early part of his charge stated: "The Commonwealth has the burden at all times to convince you of their guilt beyond a reasonable doubt; unless you are convinced beyond a reasonable doubt of the guilt of any one of these defendants, as to any particular charge, you can not convict him, or her, of that charge. ...... A reasonable doubt is not a passing

fancy or just a possible doubt. There is always the possibility of doubt. A reasonable doubt is a doubt arising out of the evidence, out of the whole evidence or any part of the evidence, of a sort that would make you hesitate in coming to a decision in the conduct of any of the important affairs of your own life. As I say, it is a doubt arising out of the evidence, not out of sympathy or out of prejudice or out of anything outside the evidence."

If the trial judge had not referred again to the doctrine of reasonable doubt very probably the objection now before us would not have been raised by the appellant. Later in his charge he said that in order to find a verdict of guilty as to any defendant on any charge, it must be convinced, beyond a reasonable doubt that: (1) the writing in question was forged; (2) the defendant knew it was forged; (3) knowing it was forged he or she offered it or was concerned in offering it before the master or in causing it to be offered, or that he or she gave testimony before the master to establish this writing as genuine; and (4) the intention to defraud, to the prejudice of others rights. "If you have a reasonable doubt as to any of these various things, as to any defendant on any charge then you cannot find that defendant guilty of the charge in question. If you believe that the evidence establishes those facts beyond a reasonable doubt, then your verdict should be guilty as to that defendant upon that charge. *And when I mention, after this, in any case, the facts that have to be established by the Commonwealth, or the important facts, those are the facts I mean, so that you may distinguish them from the other facts, which are offered only for the purpose of proving some one of those facts: all the other facts, theoretically, are offered only for the purpose of proving some one of those things or of disproving some one of those things."* The italicized portion is the part that is challenged.

The judge apparently tried to be either more specific

or to clarify the definition approved by the Supreme Court. Neither was necessary. In *Commonwealth v. Green,* 292 Pa. 579, 590, 141 A. 624, the Supreme Court recognized that the subject of reasonable doubt has had to be considered in numerous appeals, and has necessitated the reversal and retrial of many cases. Mr. Chief Justice MOSCHZISKER, in the hope of aiding the trial judge of future criminal cases laid down a doctrine of reasonable doubt and stated: "Over-elaboration of the definition of reasonable doubt often leads to refinements which tend to confuse rather than help the jury to a correct understanding of the doctrine."

We think the judge's instruction, however, was not fatally incorrect. In referring to the important facts it is evident that he had in mind the four prime issues to which he had just referred and that the other facts were more or less incidental thereto and were for the purpose of supporting main or primary ones which he mentioned. He did not say that if the jury had a reasonable doubt as to a minor fact it could not work an acquittal. The jury had previously been instructed that a reasonable doubt is one that arises out of the whole evidence or any part of the evidence. We are of the opinion that those instructions did not warrant a reversal of this case.

The appellant argues that the court erred in refusing to affirm her 5th point reading as follows: "In order that the act of the defendant [the offering of the German Bible] be construed as her act it is necessary that it be her own free and voluntary act and not superinduced by fraud or entrapment."

Cohn testified that he was taken to appellant's home by her nephew and there on the table he found a large Bible, many pens and bottles of ink. She told him that she was preparing a family tree and wanted the family history to be written in German script in this German Bible and requested him to use, if he could, a quill as that was the way it was done in Germany. He then

wrote from the information she gave him the history of the family, the family names, dates, etc., which appears in exhibit No. 13. Cohn, learning through à newspaper of the use that was being made of this German Bible in connection with the Garrett case, first reported the knowledge he had to the Lancaster District Attorney and in due time to Koehler, who was connected with the office of the master. The German Bible was then produced in the manner in which we have heretofore outlined. We do not find that there was any coercion or inducement constituting an entrapment.

If the jury believed Cohn's testimony, as it apparently did, this appellant was not a party who was persuaded or coerced to commit a criminal act. She had conceived and carried into effect, on her own volition, the scheme to make the false entries for the fraudulent purpose of uttering the same by getting them on the record in the hearing before the master. We find nothing that warrants the conclusion that she was imposed upon or influenced so to do. Six days after Cohn made the entries she came into court and uttered the German Bible as an authentic family Bible and stated that she had seen these entries 40 years ago. The crime with which she was charged was already planned and in the process of being consummated before she was examined about the Bible. She was not influenced or coerced to commit a criminal act by any person representing the Commonwealth. In the language of the court below: "A crime is none the less such because exposure is withheld until the criminal of his own accord commits the overt act which brings his conduct within the purview of the law. To argue that Grace had no intention to use the forged record under such circumstances is futile. There was no entrapment." See *Corbett v. State of Ohio,* 5 Ohio Cir. Ct.

We have given careful consideration to all the contentions raised by the appellant and we find them destitute of merit.

There is one matter which requires correction. The sentence imposed was not in accordance with the Act creating the State Industrial Home for Women at Muncy: July 25, 1913, P. L. 1311, as amended by Acts of May 14, 1925, P. L. 697 and June 22, 1931, P. L. 859, 61 PS §566. It provides that women over the age of sixteen years convicted for an offense punishable by imprisonment for more than a year may be sentenced to confinement in the said State Industrial Home for Women and that "every sentence imposed pursuant to this Act shall be merely a general one to the State Industrial Home for Women, and shall not fix or limit the duration there. ......" See *Commonwealth v. Meyers,* 146 Pa. Superior Ct. 352, 22 A. 2d 81.

The judgment of the court in sustaining the conviction is affirmed but the record is remitted to the court below to impose upon the defendant a general sentence of confinement to the State Industrial Home at Muncy in accordance with the Act of 1913, as amended.