Commonwealth *v.* Hancock, Appellant.

586

Argued November 9, 1954. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE and ERVIN, JJ.

Nicholas J. D'Alessandro, with him Henry A. Torchia, for appellant.

H. F. Dowling, District Attorney, with him Richard D. Walker, Assistant District Attorney, for appellee.

OPINION BY HIRT, J., March 24, 1955:

The indictment in this case charged that the defendant by false pretense did "unlawfully and feloniously obtain from . . . Eston Klinger & Son Lumber Co., a certain amount of lumber of the value of $3,-747.88 . . . with intent to cheat and defraud . . ." The indictment charges a felony under §836 of The Penal Code of June 24, 1939, P. L. 872, as amended, 18 PS §4836. Following defendant's conviction his motions

for a new trial and in arrest of judgment were denied and sentence was imposed.

It is established by the testimony that defendant on June 4, 1951, came to the place of business of Eston Klinger and Son Lumber Company near Elizabethville in Dauphin County and there talked with E. Leroy Klinger, the president of the company. He stated that he had made a contract to build a garage or service station with apartments on the second floor for "a party at Fountain Springs" near Ashland in Schuylkill County, Pennsylvania, and that he needed a large quantity of lumber for the job. He said that he wanted all of the lumber delivered at one time so that he could have the building in an advanced stage of construction within 30 days when he would be entitled to receive a substantial payment on his building contract. To induce the Klinger Lumber Company to sell the lumber to him on credit he represented that the payment would be turned over to the company to pay for the lumber in full, and that it would be adequate in amount for the purpose. On these representations, although relying also on the company's right to file a mechanic's lien, Klinger agreed that the company would supply the lumber and would extend credit for payment within 30 days. When defendant produced a list of the lumber that would be required, he was advised that the company did not have all of it in stock but would acquire the unstocked items from other dealers for delivery to the defendant. On the acceptance of his order, the defendant stated that he was living with "the party" for whom he was constructing the building and that he, the defendant, could be reached there by calling telephone number Ashland 730. Three days later, the defendant called Klinger and asked that delivery of the lumber be made as soon as possible. On June 12, 1951 Klinger telephoned Ashland 730 in-

tending to talk with the defendant. The man who answered the call identified himself as Lamont Miller and he told Klinger that he was the party with whom Hancock had a contract to erect a building.

The first delivery of lumber was made on June 15, 1951, in accordance with defendant's instructions, on the land of Lamont Miller in Fountain Springs who was present when delivery was made. E. R. Klinger, vice-president of the lumber company accompanied the load to the Miller lot. The defendant arrived on the scene soon thereafter; the size of certain windows was discussed and defendant again urged that the balance of the lumber be delivered to the Miller lot so that construction could be completed without delay. On June 22, 1951 Lamont Miller accepted delivery of a load of lumber on his land and receipted for it in the name of Hancock. Window frames subsequently delivered to the premises were placed in Miller's garage at his request. On June 25, at the time of the last delivery, defendant made a number of excuses for his delay in starting construction. Lamont Miller had stated to E. R. Klinger at the time of the first delivery that he would pay for the lumber if Hancock didn't "because he was putting up this building and wanted to have it free and clear." E. R. Klinger testified also that Miller on July 14 told him that Hancock would start the building on the following Monday and that Miller again said: "If he didn't pay for it, I will." On July 18th E. R. Klinger went to Ashland and then found that all of the lumber had been removed from the Miller lot. Over the telephone Miller then told him "he and Hancock . . . had a scrap and he [Hancock] loaded this lumber and took it up to North East" in Erie County. Thereafter the Klinger Company employed a licensed private detective, and a member of the Pennsylvania State Police collaborated with him

in an investigation. They located portions of the lumber elsewhere in Fountain Springs. Parts of the lumber which had been removed from the Miller lot were found at Helfenstein and in Frackville, in Mount Carmel, in Culmount, and Locustdale and elsewhere. The company was unable to effect a return of any of this lumber and was never paid for any part of it. George Malafarina testified that at Lamont Miller's request he hauled three loads of lumber from the Miller property on Sunday July 15, 1951, starting at 4 a.m.; two of the loads were delivered as directed to an address in Helfenstein and the third in Locustdale. He was paid $30 by Miller for his services. There is other testimony directly to the effect that Miller sold some of the lumber for cash after its delivery to his premises.

Over defendant's objection, testimony as to statements of Lamont Miller, made to the Klingers in relation to the lumber, above referred to, were admitted in evidence although not made in the presence of the defendant. The admission of this testimony as hearsay is assigned as error by defendant in seeking a new trial.

In *Commonwealth v. Sheaffer,* 149 Pa. Superior Ct. 51, 23 A. 2d 215 the appellant was charged, along with other defendants in various bills of indictment, with fraudulent uttering and publishing certain false instruments. On the trial the declarations of a codefendant made in the absence of the appellant were admitted in evidence against her. We there held in effect that since the evidence as a whole tended to establish a common intention, plan and design of the defendants, the lower court did not err in receiving the declarations which otherwise would have been inadmissible as hearsay, although the defendants were not charged with conspiracy. In that case we stated the controlling principle thus: "It is true that the gen-

eral rule is that statements are only admissible against the party who makes them, but where, as here, there is proof of a combination between several persons for an unlawful purpose, any act done by one party in pursuance of a concerted plan with reference to the crime charged, is the act of all and the proof of such act is evidence against any and all of the others who were engaged in the unlawful common plan and de- sign: Wharton's Criminal Evidence, §698, p. 1430. This rule applies notwithstanding the indictments do not charge a conspiracy: Com. v. Biddle, 200 Pa. 640, 50 A. 262; Com. v. Spardute, 278 Pa. 37, 49, 122 A. 161; 22 C.J.S. 1293, §756." In *Commonwealth v. Spardute*, 278 Pa. 37, 49, 122 A. 161, the general rule was approved to the effect that: " '. . . Where, although no conspiracy is charged, it is made to appear that there was concerted action between codefendants, the acts and declarations of one are admissible against the other' " and " 'That the accused was not present when the declaration, which is introduced against him, was uttered by a fellow conspirator, does not of necessity render it incompetent if it conforms to the rule in other respects': Underhill on Criminal Evidence, 2d ed., section 493, p. 799." There was no indictment charging Miller and Hancock with conspiracy as there well might have been but Miller's declarations nevertheless were admissible against Hancock because of their concerted action.

Defendant moved in arrest of judgment contending that (1) The indictment was fatally defective in that the information[1] did not charge an indictable offense

---

[1] The information charged: ". . . On the 4th day of June 1951, . . . Vernon E. Hancock . . . did unlawfully and falsely and designedly pretend to one Eston Klinger and Son Lumber Company . . . that he . . . wished to order lumber and *did order lumber*, to the value of . . . $3,747.88 . . . [on 30 days credit] *for the purpose*

592

and the indictment therefore was fatally at variance with the information; and (2) The Dauphin County Court did not have jurisdiction.

Defendant's motion to quash the indictment was properly refused. The technical accuracy necessary to an indictment is not essential in an information, and where an information puts the defendant on notice of the substance of the crime for which he is being held, it is sufficient. *Commonwealth v. Beloff*, 166 Pa. Superior Ct. 286, 289, 70 A. 2d 689. The elements of the crime of obtaining property by false pretense, under §836 of The Penal Code, are (1) a false pretense; (2) obtaining property of value thereby and (3) an intent to cheat and defraud. *Commonwealth v. Gross*, 161 Pa. Superior Ct. 613, 56 A. 2d 303. The language of the information, which, shorn of formal phrases, appears in the margin, substantially charged a false pretense in that the defendant designedly pretended to order the lumber "for the purpose of building" and the lumber was supplied and Hancock obtained it upon that false representation. The intent to cheat and defraud is charged in the averment that defendant obtained the lumber intending "to convert the said lumber into cash and not to use same for building as originally stated when ordered." Thus the information sufficiently, as a basis for an indictment under §839 of

_of building,_ . . . all of which he the said defendant, Vernon E. Hancock . . . well knew to be false and untrue; however the said . . . Lumber Co. relying upon the said statement and believing it to be true, delivered to . . . Hancock the said lumber . . .; and by color and means of which he the said Vernon E. Hancock obtained . . . said lumber, knowing that he intended to convert the said lumber into cash money and _not use same for building as originally stated when ordered;_ and all this was done with an intent to cheat and defraud the said . . . Lumber Co. of the said lumber . . . to a value of . . . $3,747.88." (Italics added).

The Penal Code, charged a false representation by the defendant as to his intended use of the lumber, which, according to his intention did actually deceive the lumber company to part with the lumber. The fact that assertions of fact were blended with representations as to the intended future use of the lumber did not render the false assertions ineffective. *Commonwealth v. Gross,* supra. The language of the information, in some respects inartistically, but nevertheless clearly, put the defendant on notice of the crime for which he was held, to wit: the offense made a felony by §836 of the Code.

In this class of cases a question, not entirely free from difficulty, has often arisen where the acts were committed in two or more jurisdictions. Cf. Clark, Law of Crimes, 2nd Ed. §501. In Pennsylvania, however, to constitute the offense of obtaining property by false pretenses, the property must have been actually *obtained* by the accused in the jurisdiction where the prosecution is brought. On the question of jurisdiction it is contended by appellant that since the Klinger Lumber Company did not deliver the lumber to the defendant by common carrier (*Commonwealth v. Karpowski,* 167 Pa. 225, 31 A. 572; Cf. *Commonwealth v. Schmunk,* 207 Pa. 544, 56 A. 1088) but used its own trucks for the purpose, the Dauphin County courts did not have jurisdiction because the lumber was not *obtained* by defendant until he received it in Schuylkill County. In our view other considerations are involved which clearly confer jurisdiction in Dauphin County.

In the course of the negotiation of the purchase and sale of the lumber in this case E. Leroy Klinger told the defendant that the Klinger Company did not have in stock all of the lumber specified as necessary for the construction of the building which defendant pre-

tended to have in contemplation. An element of the intent to cheat and defraud the Klinger Company was defendant's false pretense that he had a contract for the construction of a building and for that reason all of the lumber would have to be delivered at about the same time. He was so insistent in this respect that the Klinger Company arranged with an independent dealer to buy the items of lumber which it could not supply. The dealer bought some lumber in Dauphin County and he went to Connecticut and bought a truck load of lumber there. This lumber was not bought for the purpose of augmenting the general stock of the Klinger Lumber Company. It consisted exclusively in the various items of lumber set forth in detail in the specifications submitted by the defendant which the Klinger Company could not supply. The lumber bought in Connecticut was transferred directly from the dealer's truck to a truck of the Klinger Company in Dauphin County for conveyance to the defendant. The circumstances under which these items of lumber were acquired by the independent dealer indicate that they were bought for the defendant and that in these transactions the Klinger Company in reality was the defendant's agent. Accordingly the delivery of the lumber, so purchased, to the Klinger Company as agent for the defendant, was delivery to him in Dauphin County. Wharton Criminal Law, Vol. 2, 12th Ed., §1476 and Vol. 1, §324. Cf. *Commonwealth v. Hancock,* 64 Dauphin 372; *Commonwealth v. Zurcher et al.,* 45 D. & C. 555. He obtained a substantial part of the lumber in Dauphin County. Venue therefore was properly laid in Dauphin County and the courts of that county had jurisdiction of the offense.

Judgment of sentence affirmed.