## Commonwealth v. Olson
## Commonwealth v. Shade

*Charles W. Kugler*, District Attorney, for Commonwealth.

*Frank E. Tressler*, for defendants.

CRYTZER, P. J., November 11, 1959.—The above entitled cases are unrelated except as to the type of offense alleged. Each defendant is charged with violating section 1012, subsec. (*a*), of The Vehicle Code of May 1, 1929, P. L. 905, 75 PS §571 (*a*). The information charges that Roy Olson ". . . upon backing his vehicle on Route 811 and turning onto Leg. Route 50002, did fail to observe whether such movement could be made in safety, this resulting in being the primary cause of an accident . . ." The other information charges that Harold L. Shade ". . .while operating the above named vehicle on U. S. Route 22 did bring his vehicle to a halt on the above mentioned highway without first seeing that such a move could be made in

safety and thus causing vehicles to the rear of his vehicle to become involved in an accident ..."

Each information charges that the act was unlawful and sets forth specifically the violation of section 1012, subsec. (*a*), of The Vehicle Code. The other jurisdictional requirements are met by each information.

The particular section reads:

"The driver of any vehicle upon a highway, before starting, stopping or turning from a direct line, shall first see that such movement can be made in safety, and, if any pedestrian may be affected by such movement, shall give a clearly audible signal by sounding the horn, and whenever the operation of any other vehicle approaching or following may be affected by such movement, shall give a signal, as required in this section, plainly visible to the driver of such other vehicle of the intention to make such movement."

Although one of the offenses charged occurred prior to and the other after the effective date of The Vehicle Code of April 29, 1959, P. L. 58, it makes no difference which revision of the code is applicable since the language of the section invoked is the same in each of them.

### Contentions

Defendants contend that in order to state an offense under the section, the information must allege that defendant failed to give a signal, and lacking such allegation, the information is defective and must be quashed.

The Commonwealth contends that the section requires three acts which a driver must perform in certain situations. Failure to do any one of these is a violation of the statute. Defendants have failed to do one of these required acts, namely, "... before ... stopping or turning; ... first (seeing) that such movement can be made in safety ..." The informations

allege this in essentially the language of the statute, and are therefor sufficient and should not be quashed.

## Discussion

Defendants say that this section pertains only to signals. The implication is that failure to see that the movement can be made in safety is not by itself a violation of the section. They rely primarily on Thomas v. Mills, 388 Pa. 353, 130 A. 2d 489 (1957). This case appears to support their position. However, it is distinguishable on the facts.

The Olson case in distinguishable from the Thomas case. In the Thomas case, the driver merely stopped. The divided court held that the statute did not require him to look to the rear before stopping since his primary duty was to look in the direction in which he was going and to observe the intersecting highway into which he proposed to turn. Olson, on the other hand, was not merely stopping, but was backing and turning. By failing to observe that the movement could be made in safety, Olson was failing to do the very things the Thomas case held was his primary duty, viz., looking in the direction he was going and observing the intersection.

Both the Olson and Shade cases are further distinguishable from the Thomas case. The Thomas case was a civil action and concerned whether a failure to observe if a movement could be made safely was negligence. The case did not specifically decide if such a failure was a criminal offense, or if any information that does not mention signaling is sufficient. The case is persuasive authority. But it is not controlling authority, and the court is free to examine the statute.

## Statutory Construction

A. Plain Meaning Approach

The Statutory Construction Act of May 28, 1937, P. L. 1019, art. IV, sec. 51, 46 PS §551, provides:

"The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the Legislature. Every law shall be construed, if possible, to give effect to *all* its provisions.

"When the words of a law are clear and free from all ambiguity, the *letter* of it is not to be disregarded under the pretext of pursuing its spirit." (Italics supplied throughout.)

The literal or plain meaning of the section indicates that the informations here allege an offense. A careful reading of the section reveals that a driver is required to do three things whenever certain conditions exist. It requires the driver to (1) "see that such movement can be made in safety", (2) "give a clearly audible signal, by sounding the horn" and (3) "give a signal ... plainly visible."

The words used are not permissive or mere suggestions. They indicate commands: The driver "*shall* first see," "*shall* give a clearly audible signal" and "*shall* give a signal". The statute also provides penalties, so it is inconceivable that the words "shall" could mean anything other than that the driver is required to do these things.

The defense agrees that the signaling part is mandatory. Yet the language is no more of a command in that regard than it is in first seeing that the movement can be made in safety. It is their contention that in the same sentence the legislature used the same word ("shall") to convey two contrary meanings.

B. Context Approach

Although it is not necessary, let us further pursue defendants' positions on statutory construction. The meaning of a section can sometimes be found by reading it in the light of the surrounding sections. This is the approach used in Thomas v. Mills, supra, defendants' main case. That case suggests that because the other subsections deal with signaling, the entire sec-

tion deals with that and nothing else. This argument, when reduced to its simplest terms, is that a section outlaws only that which it discusses at the greatest length. The application of this reasoning to section 1012 illustrates its fallaciousness. The duty to see that a movement can be made in safety is sufficiently covered in subsection (*a*) and nothing more need be said about it. But the signals referred to in the same subsection are meaningless unless elaborated upon. So it is necessary to use other subsections to explain what hand signals and mechanical devices are acceptable. It is unlikely that the legislature by adding these explanatory sections intended to exclude everything but signals from the command of the section.

Defendants rely on the heading of the statute "Signals on starting, stopping, turning" as a mandate for excluding everything except the duty to signal.

The aforesaid Statutory Construction Act of May 28, 1937, P. L. 1019, art. IV, sec. 54, 46 PS §554, states:

"The headings prefixed to chapters, articles, sections and other divisions of a law *shall not be considered to control* but may be used to aid in the construction thereof."

C. Purpose Approach

An examination of the purpose of the statute also lends weight to the Commonwealth's position. Although no purpose section is included in The Vehicle Code, it is reasonable to assume that its purpose is to promote safe driving on the highways. A provision making it mandatory before stopping, starting or turning, to see that the movement can be made in safety is very much in keeping with this purpose.

D. Policy Approach

The Commonwealth position is also the desirable one from the standpoint of public policy, as it provides

sanctions for neglecting a requisite of safe driving. If defendants' view were followed, it would be possible for drivers to make sudden starts, stops and turns without looking. These movements could endanger others, or as in the cases at bar, actually result in accidents, but still go unpunished unless it could be shown that the driver failed to signal. It would also be possible for a negligent or malicious person to make dangerous stops or turns without looking but avoid prosecution by signaling.

In both the cases at bar it is alleged that defendant has caused an accident by stopping or turning without first looking to see if the movement could be made in safety. Should these acts be considered legal merely because the drivers may have signaled? The offense had been committed when defendants failed to look and see that the stop or turn could be made in safety. That is the first prerequisite, as the first duty is to observe; it is a violation to stop, start or to turn, signal or no signal, unless the operator sees that such can be done in safety.

The use of a turning signal is not the rod of Moses to part the flood of flowing traffic with wave on wave of jammed and colliding vehicles to open a dry path to the driver's Promised Land. Nor is the blind and raucous horn a cry of "Open Sesame" perilously throwing back the pedestrians so the wondrous cave shall open. The courts cannot encourage "driving with the horn" instead of driving with caution.

### Sufficiency of Information

The informations are sufficient. Each charges an offense which was complete upon defendant's failure to comply with the first duty imposed by the statute. Detailing the subsequent duties is not required when violation of the first constitutes a completed violation. These are not indictments, but informations. The same

degree of exactness in stating an offense is not required of informations as is required of indictments: Commonwealth v. Hancock, 177 Pa. Superior Ct. 585, 112 A. 2d 407 (1955).

The only two requirements in this respect that an information must fulfill are: (1) That it gives defendant sufficient information to prepare his defense; and (2) that it protects him from a second prosecution for the same offense: Commonwealth v. Blaney, 66 D. & C. 401 (1949).

In both the Olson and Shade cases, the informations tell the exact times and places of the offenses and both refer to accidents. This should make it clear to defendants, and to future prosecutors, what occurrence is involved. The informations also refer to the specific section and subsection of The Vehicle Code under which defendants are charged and spell out the exact commissions and omissions of defendants. Reference to that section should make clear to defendants anything about the charge which is unclear.

There is enough information to enable defendants to prepare defenses, and there is more than enough to prevent future prosecution.

### Conclusions

A. Turning or stopping without first seeing if such movement can be made in safety is a violation of section 1012 (a) of The Vehicle Code.

B. It is not necessary to allege a failure to signal in order to make out a violation of section 1012 of The Vehicle Code.

C. The informations in both cases are sufficiently clear to enable defendants to prepare defenses and prevent future prosecutions.

D. The informations are sufficient and should not be quashed.

*Orders*

And now, November 11, 1959, in each of the above cases defendant's preliminary objections, motion to quash the information and motion to dismiss the proceedings are denied and refused.