## Commonwealth v. Burge

*S. F. Bonavita,* for Commonwealth.

*C. H. Nicholson,* for defendant.

FLICK, P. J., April 7, 1964.—Defendant by his attorney has filed a motion that the court reconsider its opinion and order of March 16, 1964, dismissing defendant's petition for leave to appeal from the judgment of the justice of the peace finding defendant guilty of violation of section 1012(a) of The Vehicle Code of April 29, 1959, P. L. 58.

Attached to the motion is an affidavit by defendant setting forth facts averred to have been placed before the justice by the testimony but omitted from the transcript of the hearing. The points raised in the motion and also in the affidavit will be considered in order.

(1) Paragraph No. 1 avers that:

"The complaint is fatally defective in that the complaint does not charge that the defendant made any movement in a manner contrary to the law. The complaint merely alleges that defendant "attempted" to make a movement."

The complaint is fully set forth in the court's opinion. It charges that defendant, "suddenly stopped and attempted to back up to talk to a truck driver who was parked on the east side of the highway. Defendant failed to see that such movement could be made in safety. All of which is in violation of section 1012, subsection A, Act 32, P. L. 1959, and all amendments thereto and against the peace and dignity of the Com-

monwealth." It is not the averment that "defendant attempted to back up . . ." which is alleged as a violation of The Vehicle Code. Section 1012(a) makes no reference to backing up. This section does provide that, "The driver of any vehicle upon a highway before . . . stopping, . . . shall first see that such movement can be made in safety. . . . before making any such vehicle movement, the driver shall give a plainly visible signal in the manner directed in this Section. . . . stopping signals shall be given during the time vehicle speed is being reduced by braking." The information in this case clearly charges that defendant suddenly stopped and that he failed to see that such movement could be made in safety. The further averment that defendant attempted to back up to talk to a truck driver is mere surplusage. Backing up or attempting to back, unless the driver is moving his vehicle from one lane of traffic to another, is not prohibited in the act. Such fact could only be introduced into the case for an explanation as to why defendant committed the prohibited act, i.e., stopping suddenly without first seeing that such movement could be made with safety. True, an explanation of the purpose for which defendant stopped on the highway is clearly relevant as tending to prove that he did stop, but it is not an ingredient of the offense. Section 1012(a) required defendant, before stopping on the highway, to first see that such movement could be made with safety. The complaint charged that he suddenly stopped and that he failed to see such movement could be made in safety, in violation of section 1012(a). He cannot escape the consequences of his unlawful act because the complaint, in addition to charging him with the acts amounting to a violation of section 1012(a), also states that when he stopped he attempted to back up.

Stopping upon a highway without first seeing that such movement can be made in safety is an offense

itself, whether defendant made the required signal or failed to make such signal. Although defendant's stop lights may show when he applies his brakes in order to stop upon the highway, he is violating section 1012(a) if it is shown that he stopped without first seeing that such movement could be made in safety. This point is clearly discussed in Commonwealth v. Olson, 20 D. & C. 2d 709, a case in which defendant objected to the complaint charging him with a violation of section 1012(a). On pages 713 and 714, the court said:

"An examination of the purpose of the statute also lends weight to the Commonwealth's position. Although no purpose section is included in The Vehicle Code, it is reasonable to assume that its purpose is to promote safe driving on the highways. A provision making it mandatory before stopping, starting or turning, to see that the movement can be made in safety is very much in keeping with this purpose . . .

"The Commonwealth position is also the desirable one from the standpoint of public policy, as it provides sanctions for neglecting a requisite of safe driving. If defendants' view were followed, it would be possible for drivers to make sudden starts, stops and turns without looking. These movements could endanger others, or as in the cases at bar, actually result in accidents, but still go unpunished unless it could be shown that the driver failed to signal. It would also be possible for a negligent or malicious person to make dangerous stops or turns without looking but avoid prosecution by signaling." This case also points out that:

"The same degree of exactness in stating an offense is not required of informations as is required of indictments: Commonwealth v. Hancock, 177 Pa. Superior Ct. 585, 112 A. 2d 407 (1955).

"The only two requirements in this respect that an information must fulfill are: (1) That it gives defendant sufficient information to prepare his defense; and

(2) that it protects him from a second prosecution for the same offense: Commonwealth v. Blaney, 66 D. & C. 401 (1949)."

The complaint in this case clearly charged defendant with violation of section 1012(a). He is in no way harmed by the fact that the complaint also states that he attempted to back up. The complaint fulfills all requirements of the law.

(2) Paragraph No. 2 avers that:

"The complaint was insufficient to confer jurisdiction on the Justice of the Peace of Clarendon Borough, inasmuch as Legislative Route No. 61046 traverses Mead Township, Pleasant Township, re-enters Mead Township, and enters Clarendon Borough, and nowhere in the complaint is the alleged violation set forth, wherefore from the fact of the complaint it cannot be determined in which of the three municipalities jurisdiction lay."

As stated in the court's opinion denying the appeal, Legislative Route 61046 runs from a dead end in Clarendon Borough about 5.7 miles to a dead end at the Chapman Dam State Park. Clarendon Borough is situated in the center of Mead Township so that when Route 61046 leaves Clarendon Borough it crosses the western half of Mead Township. Chapman Dam is located in Pleasant Township, which adjoins Mead Township on the west, and Route 61046 extends into Pleasant Township to the dam. The information states that it was filed before John Miley, a justice of peace in Clarendon Borough, he being the nearest available magistrate to the place of violation. Is the information fatally defective because it does not state whether the violation occurred in Clarendon Borough, Mead Township or Pleasant Township?

The information does aver that the violation occurred on Route 61046, and that John Miley in Clarendon Borough before whom it was filed was the nearest

available magistrate. It must be presumed that the trooper complied with the provisions of The Vehicle Code unless the contrary is shown. See Commonwealth v. Bryan, 23 D. & C. 2d 797, 798 (1961). Therefore it must be presumed from the facts averred in the information that the offense occurred in Clarendon Borough, or in adjoining Mead Township with no justice of the peace available. Section 1201, as amended, 75 PS §1201(a), provides, inter alia: "Informations, charging violations of any of the summary provisions of this act . . . shall be brought before the nearest available magistrate within the city, borough, incorporated town, or township in the county where the alleged violation occurred, . . . or if there is no person holding the office of magistrate in such city, borough, incorporated town, or township, then such information shall be brought before such nearest available magistrate in any adjoining city, borough, incorporated town, or township in the county, . . ."

If the alleged violation was committed in Pleasant Township which does not adjoin Clarendon Borough, or in Mead Township and a justice was available, then the trooper did not comply with section 1201(a) of The Vehicle Code. Such, however, is not the fact. The record shows that he did comply with the law. The violation occurred in Clarendon Borough, he filed the information before the nearest magistrate. No doubt it would have been better procedure to recite in the information that the offense occurred in Clarendon Borough, but the omission is only a technical defect. In view of the other facts averred, defendant was not misled. In offering his defense he did not deny that the collision occurred in Clarendon Borough and the information was filed before the nearest magistrate in said borough.

No case exactly in point can be found. However, there are similar situations. In Commonwealth v.

Bryan, supra, the information averred that the offense of reckless driving occurred in the city of Williamsport and the information was filed before an alderman in said city. It was not averred that the alderman was the nearest available magistrate to the place where the alleged violation occurred, and defendant claimed the information was fatally defective. Under the facts of that case, failure to aver that the magistrate was the nearest available, was not a fatal defect. The court said, page 798: "We are of the opinion, however, that it is not necessary to allege in the information or transcript that the justice of the peace or alderman before whom the prosecution is made is the nearest available magistrate. It has been held that there is a presumption of the regularity of the proceedings where the prosecution was brought before a justice of the peace in the same township as the alleged violation: Commonwealth v. Arcara, 81 D. & C. 42. In the instant case, there is no question that the magistrate involved has his office in Williamsport and that the offense occurred in Williamsport. This being so, the burden is on defendant to show that the magistrate in this case is not the nearest available magistrate: Commonwealth v. Arcara, supra. We are not in accord with the Commonwealth v. Quick, 89 D. & C. 471, cited by defendant."

This court agrees with President Judge Williams of Lycoming County who wrote the opinion in Commonwealth v. Bryan.

In Commonwealth v. Mosier, 22 D. & C. 2d 258 (1960), the very able opinion is written by President Judge Mook of Crawford County. In that case the alleged violation of The Vehicle Code, speeding, occurred in East Fairfield Township and the complaint was filed before a justice of the peace in the adjoining borough of Cochranton. The information showed these facts but did not show that there was no justice of

the peace at that time in East Fairfield Township. Defendant's counsel argued that the information was fatally defective because it fails to state that there was no justice of the peace in the township where the violation took place. Judge Mook analyzed the cases relied on by the defendant and found that they all referred to and relied on Commonwealth v. Bedding, 38 D. & C. 103, where the court said, page 106: "It seems to us, under The Vehicle Code, the information should have been laid before a justice of the peace in Cooper Township, or if there is no justice of the peace in Cooper Township, then before a justice of the peace in an adjoining township, city, borough, or incorporated town, and the *transcript* should show affirmatively these facts in order to give the justice of the peace jurisdiction." Judge Mook also discussed Mr. Carringer's treatise on Summary Convictions in Pennsylvania and several cases holding that the information must set forth every element of the offense and facts necessary to establish the jurisdiction but he notes that the required facts are the facts of the alleged crime and not the fact of the location of the office of the justice of the peace.

Judge Mook found that, in view of the averments which were made in the information, i.e., that the justice in Cochranton Borough was the nearest available to the place where the offense was committed in the adjoining township, the failure to aver that there was no available justice in the township was a technical defect, not a fatal defect which deprived the justice of jurisdiction. The opinion also rules that, under Commonwealth v. Burall, 146 Pa. Superior Ct. 525, technical deficiencies in the information are waived when an appeal is taken to the court of quarter sessions.

In the instant case the omission from the information of an averment that the violation occurred in

Clarendon Borough, is not a fatal defect in view of the other facts averred and the evidence shown in the transcript. Like the omissions in the Bryan case and Mosier case above cited, it is at best a technical defect which, under all the record facts, is not sufficient legal ground for appeal or to quash the complaint for lack of jurisdiction. The ruling here is certainly not a general ruling that no information for violation of The Vehicle Code needs to state the municipality where the alleged offense occurred. Good practice requires such an averment in all cases. However, the omission of such an averment is not a fatal defect under the facts of the instant case. It is merely a technical deficiency and enforcement of The Vehicle Code should not be thwarted on such technical grounds.

(3) Paragraph No. 3 avers that:

"The transcript filed by the Justice of the Peace was incomplete in that it failed to set forth the testimony of Connie Mealey that just before the accident she was looking toward a friend's house to see if she could see the friend, and then the collision took place."

The transcript does not need to set forth the testimony given at the hearing before the justice of the peace. It need show only that a full hearing was held and that defendant had an opportunity to present his side of the case. If the testimony showed that Connie Mealey was negligent, that is not sufficient to relieve defendant from liability for stopping without first seeing that he could stop in safety. The transcript shows that the right front tire of the Mealey vehicle left skid marks on the road, approximately 30 feet long. She was therefore not looking toward a friend's house when she ran into the rear end of defendant's vehicle. She was at least 30 feet from defendant's stopped vehicle when she applied her brakes in an attempt to avoid the collision. If she was following too closely behind defendant's vehicle that is all the more reason why he

should not stop without seeing that it would be safe. The transcript does state facts from the testimony on which the justice could make his decision.

(4) Paragraph No. 4 avers that:

"The transcript of the Justice of the Peace was incomplete in that it failed to set forth that Connie Mealey testified she was driving at about 10 to 15 miles per hour as she was following the Burge vehicle."

Again, the transcript is not required to set forth all the testimony. If Connie Mealey was traveling close behind defendant's vehicle, she could well be going at a speed of 10 to 15 miles per hour and be unable to avoid a collision when defendant suddenly stopped. Her manner of operation might amount to a violation of The Vehicle Code but that does not relieve defendant from the responsibility placed upon him by section 1012(a). Before stopping he must first see that he could stop with safety. This the justice found he failed to do and therefore he was found guilty.

The situation which was found to exist in this case is one which frequently exists and frequently results in accidents. Cars frequently follow other cars too closely and at a speed which makes it impossible to avoid striking the car ahead, if it should stop suddenly. When there are several cars in line they all pile up. This places a duty on the lead car to comply with the mandatory requirements of section 1012. He shall not stop on the highway without first seeing that such movement can be made with safety. The purpose of this requirement is well illustrated in the present case. Connie Mealey's car was following defendant's car, and defendant failed to see that he could safely stop on the highway, before he stopped suddenly.

(5) Paragraph No. 5 avers that:

"The decision of the Justice of the Peace was against the law in that it is based on hearsay testimony of Con-

nie Mealey with reference to the statements of another person as to the movements of Robert Burge's vehicle."

The transcript does not show that the decision of the justice of the peace is based on hearsay testimony of Connie Mealey. The transcript does show her testimony as follows: "Connie Mealy—Duly sworn and Testified: Was following the Burge vehicle when it slowed down. He stopped suddenly and there was no way to avoid hitting him." These facts from her testimony are facts on which the justice could well base his decision. What was told to her about defendant backing up has no bearing on the issue involved.

(6) Paragraph No. 6 avers that:

"If the court's view of the testimony is correct as set forth in page three of the opinion, then no other conclusion can be reached than that Connie Mealey was following another vehicle too closely, and she alone was guilty of a motor vehicle violation."

It may well be that Connie Mealey was following defendant's vehicle too closely but that can hardly mean that she *alone* was guilty of a motor vehicle violation. When a collision occurs it is not at all unusual to find that more than one driver is at fault or has violated The Vehicle Code.

(7) Paragraph No. 7 avers that:

"On page 4 of the opinion the court states, 'There is no evidence whatever to show that any signal was made by the defendant.' To take this view imposes upon the defendant the duty of proving that he was innocent, as opposed to the requirement of the law that the Commonwealth must prove that the defendant was guilty. With further reference to this matter, Officer Gallagher tested the stop lights on the defendant's vehicle, and found that the left stop light was functioning, but that the right stoplight had been damaged by the collision."

As stated above, stopping on the highway without first seeing that such movement can be made with safety is a violation of section 1012(a) by itself regardless of the fact that the operator made a signal with his stop lights. If the lights were working there would certainly be a signal when he stopped suddenly. What the court said about a signal can be ignored. It was only mentioned in reviewing the transcript and has no direct bearing on the issue as to whether defendant violated section 1012(a) by stopping suddenly on the highway without first seeing that such movement could be made with safety. Failing to signal is a separate offense.

(8) Paragraph No. 8 avers that:

"There is no admissible evidence whatever in the case to prove that the defendant violated the law as charged, and there is evidence to show that the other party to the collision, to-wit, Connie Mealy, followed too closely, drove recklessly, and without consideration for persons and property on the highway, and that she did not have her vehicle under control."

As shown, there was admissible evidence before the justice of the peace to prove that defendant violated the law as charged. If he did, and the justice so found from the evidence, then he cannot be acquitted because Connie Mealey followed too closely or because she may have operated her vehicle in a manner which would amount to a violation of The Vehicle Code.

Defendant's affidavit states that upon examination of the transcript he found certain significant testimony omitted therefrom, as follows:

"(1) Connie Mealey stated at the hearing that as she drove along behind the Burge vehicle she was looking toward a friend's house to see if she could see her friend, and that she had her accident shortly thereafter."

This was disposed of in paragraph No. 3 above.

(2) "Connie Mealey states that she was then 18 years old, and that she had been driving for about two and one-half years, and that she was driving at between 10 and 15 miles per hour as she was following the Burge vehicle."

This has been disposed of in connection with paragraph 4 above.

(3) "James Gallagher, the State Policeman, testified among other things that the Mealey car in stopping made skid marks thirty (30) feet long."

Defendant is mistaken when he states that the transcript does not show skid marks about 30 feet long made by the Mealey vehicle. The transcript shows testimony by Trooper James Gallagher as follows: "Skid marks on the road (approximately 30 feet) by the Mealey vehicle's right front tire about 3½ feet west of the east edge of the road. - - - the Mealey vehicle skid marks were parallel with the left berm going in a forward motion, no indication of going around, in other words no chance to avoid hitting the Burge vehicle." In view of this portion of the transcript, how can defendant possibly say that testimony as to skid marks made by the Mealey vehicle were omitted from the transcript?

Defendant's affidavit also makes reference to the fact that the State Policeman tested the stop lights; found that the left one was working but the right one was not working as a result of the collision. The matter of stop signals has been considered and disposed of above.

As requested in the motion filed by defendant's counsel, the court has carefully reconsidered its opinion of March 16, 1964. For the reasons stated above, the court can find no ground for changing the order dismissing defendant's petition for the allowance of an appeal. Wherefore the court makes the following order:

*Order*

And now, April 7, 1964, the court having carefully considered all of the reasons assigned in the motion filed by defendant's counsel to reconsider the opinion and order of March 16, 1964, and also the facts averred in defendant's affidavit attached to said motion, and having found no ground for allowing the appeal, for the reasons above set forth, it is hereby

Ordered that no ground can be found for reversal of the court's order of March 16, 1964, and the same shall stand as filed. Costs to be paid by defendant.